**UNITED TEXTILE WORKERS OF AMERICA, AFL-CIO, LOCAL UNION, NO. 120, Appellee,**

v.

**NEWBERRY MILLS, INC., Appellant.**

No. 8856.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 2, 1962.

Decided March 6, 1963.

Thomas Kemmerlin, Jr., Columbia, S. C. (Ellison D. Smith, Jr., Columbia, S. C., on brief), for appellant.

Theodore W. Law, Jr., Columbia, S. C. (Law, Kirkland & Aaron, Columbia, S. C., on brief), for appellee.

Before SOBELOFF, Chief Judge, and SOPER and BRYAN, Circuit Judges.

SOBELOFF, Chief Judge.

This action is based on a contract between an employer and a labor organization; it arises under section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185(a). The appeal is from an order of the District Court disposing of cross-motions for summary judgment. The court granted the motion of the plaintiff, Local 120, United Textile Workers, for specific performance of an arbitration provision in a collective bargaining agreement and denied the motion of the defendant, Newberry Mills, for dismissal of the action. Jurisdiction was retained for future con-

sideration of the defendant's counterclaim for damages resulting from the plaintiff's alleged breach of a no-strike clause also embodied in the collective bargaining agreement. No appeal was taken from the ruling on the counterclaim.

On June 9, 1960, a number of Newberry Mills' employees went out on strike. Apparently as a result, eighteen employees were discharged. Although the Union admits that the strike did occur and that the discharged workers were involved in it, its contention is that this was a "wild cat" strike, undertaken wholly without union sanction and actively opposed by the Union, which exerted itself to bring about a resumption of work. The Union seeks to have the discharges arbitrated, insisting that, properly interpreted, the collective bargaining agreement so requires.[1]

Newberry Mills resists arbitration because it believes that the June 9th strike constituted a violation of the collective bargaining agreement's no-strike clause.[2] It contends that since the agreement to arbitrate is the *quid pro quo* for the no-strike clause,[3] there has been a failure of consideration relieving it of the obligation to arbitrate the discharges. Also advanced are the related arguments that the dischargees, for whose benefit the Union has invoked the District Court's jurisdiction, have unclean hands; that "there is nothing to arbitrate"; that Newberry Mills has not contracted to arbitrate discharges due to a violation of the no-strike clause; and that the dischargees failed to observe an implied condition precedent to the invocation of the grievance procedure by not remaining on the job but going out on strike.[4]

■ It has been authoritatively decided that in suits under section 301 to compel arbitration the function of the courts is narrowly limited to determining "whether the reluctant party did agree to arbitrate the grievance * * *. An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582–583, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960).

■ The wording of the particular arbitration clause is an important factor

1. Under Section III of the collective bargaining agreement:
   "Grievances arising out of the operation and interpretation of this agreement involving wages (other than general wage increase or decrease proposals as provided for in Section X) hours, or other conditions of employment shall be presented within five (5) working days of the time the aggrieved party has notice or knowledge of the event giving rise to the grievance, or being reasonably charged with knowledge of the event, and shall be handled and settled in the following manner or it shall be deemed to have been abandoned."
   Thereafter provision is made for a grievance procedure culminating in arbitration.

2. "Section XVII—STRIKES AND LOCKOUTS
   "(a) The term 'strike,' as herein used, shall include any concerted stoppage or slowdown of work or other impairments of the Company's production on the part of the employees within the bargaining unit.

   "(b) During the term of this contract, the Union shall not authorize or support any strike.
   "(c) Neither the Local Union nor the International Union shall be liable for damages for any strike under Section 301 of the Labor Management Relations Act of 1947, which neither the Local Union nor the International Union does not authorize or support during the life of this agreement." (sic)

3. Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 455, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 567, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); Local 174, Teamsters, Chauffeurs, etc. v. Lucas Flour Co., 369 U.S. 95, 104–106, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962).

4. The defendant makes no claim that the proper steps, conforming to the explicit procedural requirements of the grievance and arbitration procedure, have not been taken by the Union to preserve the rights of the eighteen dischargees.

in determining questions of coverage.[5] In resolving doubts "in favor of coverage," the courts have been instructed that the parties are bound to arbitrate all matters, not explicitly excluded, that reasonably fit within the language used.[6] It cannot be said with "positive assurance" that this arbitration agreement does not comprehend the discharges that are being contested. That is, since discharges for engaging in strikes have not been explicitly excluded from the coverage of the arbitration agreement, we are not persuaded that the discharges in issue are not "[g]rievances arising out of the operation and interpretation of this [collective bargaining] agreement involving wages * * * hours, or other conditions of employment * * *." Surely, adopting a liberal interpretation of the language, as directed by the Supreme Court, the discharges are grievances as defined by the agreement.

Newberry Mills argues, however, that even assuming the discharges to be "grievances" under the collective bargaining agreement, it was relieved of the obligation to arbitrate because the strike allegedly violated the agreement. A similar argument was advanced and rejected in Drake Bakeries, Inc. v. Local 50, American Bakery and Confectionary Workers, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962). There the employer contended that it was excused, by reason of the union's alleged breach of a no-strike clause, from its contractual obligation to arbitrate its claim for damages based upon the alleged breach of that clause.[7] The Court said:

" * * * [T]his Court has prescribed no such inflexible rule rigidly linking no-strike and arbitration clauses of every collective bargaining contract in every situation. The company has not attempted, or claimed the right, either to terminate the entire contract or to extinguish permanently its obligations under the arbitration provisions. Instead, it has sued for damages for an alleged strike and, as far as this record reveals, the contract continued in effect, as did the promises of the parties to arbitrate and the promise of the union not to strike. Moreover, in this case, under this contract, by agreeing to arbitrate all claims without excluding the case where the union struck over an arbitrable matter, the parties have negatived any intention to condition the duty to arbitrate upon the absence of strikes. They have thus cut the ground from under the argument that an alleged strike, automatically and regardless of the circumstances, is such a breach or repudiation of the arbitra-

5. Compare Drake Bakeries, Inc. v. Local 50, American Bakery and Confectionary Workers, 370 U.S. 254, 256–258, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962), with Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241–243, 82 S.Ct. 1318, 8 L.Ed. 462 (1962).

6. United States Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 581, 584–585, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); see Drake Bakeries, and Confectionary Workers Inc. v. Local 50, American Bakery Workers, 370 U.S. 254, 261–262, 82 S.Ct. 1346, 8 L. Ed.2d 474 (1962); International Association of Machinists, Lodge 1652 v. International Aircraft Services, Inc., 302 F.2d 808 (4th Cir., 1962).

7. A number of lower courts, considering the effect of an alleged violation of a

no-strike clause on the employer's obligation to arbitrate employee grievances, have also rejected arguments similar to that made by Newberry Mills. See International Molders and Foundry Workers Union of North America, Local 239 v. Susquehanna Casting Co., 283 F.2d 80 (3d Cir., 1960); Retail, Wholesale Department Store Union, Local No. 1085, AFL-CIO v. Vaughn's Sanitary Bakery, Inc., 196 F.Supp. 633 (M.D.Pa.1961); Armstrong-Norwalk Rubber Corp. v. Local Union No. 283, United Rubber, etc. Workers, 167 F.Supp. 817 (D.Conn. 1958), appeal dismissed, 269 F.2d 618 (2d Cir., 1959); but see, Portland Webb Pressmen's Union Local No. 17 v. Oregonian Publishing Co., 188 F.Supp. 859, 864–868 (D.Ore.) (dictum), affirmed on other grounds, 286 F.2d 4 (9th Cir., 1960), cert. denied, 366 U.S. 912, 81 S.Ct. 1086, 6 L.Ed.2d 237 (1961).

tion clause by the union that the company is excused from arbitrating, upon theories of waiver, estoppel, or otherwise. Arbitration provisions, which themselves have not been repudiated, are meant to survive breaches of contract, in many contexts, even total breach; and in determining whether one party has so repudiated his promise to arbitrate that the other party is excused the circumstances of the claimed repudiation are critically important. In this case the union denies having repudiated in any respect its promise to arbitrate * * *." 370 U.S. at 261–263, 82 S.Ct. at 1351.

■ In several significant features this case closely resembles Drake Bakeries. Preliminarily it is to be noted that Newberry Mills' *quid pro quo* argument is even more tenuously based than that in Drake Bakeries, for Newberry Mills has itself argued that it did not even know whether the strike was called over an arbitrable matter. And, if the strike was, in fact, over a non-arbitrable matter, it cannot in fairness be said that the arbitration agreement has been repudiated or otherwise breached by the Union. As to similarities between the two cases, Newberry Mills "has not attempted, or claimed the right, either to terminate the entire contract or to extinguish permanently its obligations under the arbitration provisions." 370 U.S. at 261, 82 S.Ct. at 1351. Moreover, since the parties have agreed to arbitrate all grievances, as defined in the contract, without excluding any that may arise as a result of alleged breaches of the no-strike agreement, "the parties have negatived

any intention to condition the duty to arbitrate upon the absence of strikes." 370 U.S. at 262, 82 S.Ct. at 1351. There is, therefore, no basis whatsoever for concluding that the strike "automatically and regardless of the circumstances, is such a breach or repudiation of the arbitration clause by the union that the company is excused from arbitrating, upon theories of waiver, estoppel, or otherwise." 370 U.S. at 262, 82 S.Ct. at 1351. In addition, although the Union does not deny that there was a "strike," it denies that this strike, undertaken without its authorization or support and actively opposed by it, breached any obligation owed by it under the no-strike clause. This is by no means a frivolous argument. The no-strike clause involved here is strictly limited. It imposes on the Union only the obligation not to "authorize or support any strike" and expressly excuses it from liability "for damages for any strike under Section 301 of the Labor Management Relations Act of 1947, which [it] does not authorize or support * * *." Under this contract, the Union breaches its obligation only if it has a hand in the strike.[8] The Union's position that the strike was a "wild cat" leaves no room, in the circumstances of this case, for an inference that, by the strike, the Union has "repudiated in any respect its promise to arbitrate * * *." 370 U.S. at 263, 82 S.Ct. at 1351.

It is clear, in light of the principles enunciated by the Supreme Court, that the defendant's argument against arbitration cannot prevail.[9]

Affirmed.

8. Compare Portland Webb Pressmen's Union Local No. 17 v. Oregonian Publishing Co., 188 F.Supp. 859, 863, 866–867 (D. Ore.) (dictum), affirmed on other grounds, 286 F.2d 4 (9th Cir., 1960), cert. denied, 366 U.S. 912, 81 S.Ct. 1086, 6 L.Ed.2d 237 (1961).

9. We agree with the District Court in its view that an examination of the culpability of the dischargees would clearly involve a consideration of the merits of the grievances. This power has been denied to the judiciary. See United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 567–568, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596–599, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).