AMALGAMATED ASSOCIATION OF STREET, ELECTRIC RAILWAY AND MOTOR COACH EMPLOYEES OF AMERICA, AFL–CIO DIVISION 1318, Plaintiff,

v.

TRAILWAYS OF NEW ENGLAND, INC., Defendant.

Civ. A. No. 64–125.

United States District Court
D. Massachusetts.

May 11, 1964.

Arthur J. Flamm, Segal & Flamm, Boston, Mass., Bernard Cushman, Earle Putnam, Washington, D. C., for plaintiff.

Paul J. Redmond, Masterman & Redmond, Boston, Mass., for defendant.

SWEENEY, Chief Judge.

The plaintiff Union brought this action pursuant to Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, to compel arbitration under a collective bargaining agreement. The case is before the court on the Union's motion for summary judgment and the Company's motion to dismiss.[1]

The following facts, which are not in dispute, are culled from the pleadings and the affidavits.

Trailways of New England, Inc. (Company) is engaged in the interstate transportation of passengers by motor bus between various points in Maine, New Hampshire, Massachusetts, Connecticut and New York. A collective bargaining agreement existed between the Company and the Union effective from April 23, 1961 to February 4, 1964. By article XXI it provided for the settling of grievances as follows:

"Section 7. All grievances arising hereunder, including discharge, disciplinary action over the interpretation and application of the Agreement shall be disposed of in the following manner:"

Subsections a, b and c define the first two steps of the grievance procedure, after which, failing adjustment of the complaint, "the matter may be submitted to the determination of a disinterested Board of Arbitrators * * *." Section 7(d–1).

"Section 8. In the event any grievance, dispute or difference originates in which the Company regards itself as the aggrieved party, the Company shall take up such matter within ten (10) days from the occurrence on which such grievance is based, with the President of the Association. Failing satisfactory disposition of such grievance within ten (10) days from the date of such submission, the matter may be referred by the Company to arbitration in the same manner as set out above."

In the period between August and December differences apparently arose between the Company and the Union whether bus operators—members of the Union—were required to carry "standees." These differences culminated into a grievance when on December 29, 1963 Operator Arnold Paine refused to obey a Company order to carry standees. For this refusal he was removed from service and on December 31, 1963 was given a 30-day suspension for insubordination.

In protest of the action against Paine all other drivers represented by the Union refused to pull their runs. This work stoppage took place in spite of warnings by the Company that it considered this an illegal strike and that all participating employees were subject to discharge, and in the face of demands by the Company that the Union follow the grievance procedure of the contract. The Company thereupon discharged 190 employees for participating in the allegedly unlawful strike.

The Union filed a grievance protesting Paine's suspension on January 7, and on January 14 it filed a grievance on behalf of the employees discharged. On January 14, also, the Company notified the Union that, as a result of the unlaw-

---

1. As the Company's motion is supported by affidavits, it will also, in accordance with Rule 12(b), F.R.Civ.P., be treated as a motion for summary judgment.

ful strike, the Company was rescinding the contract effective December 31, 1963.

The Paine grievance was eventually denied on the merits, but the Company refused to participate in arbitration thereof. The general discharge grievance, the Company refused to process at all on the ground that the contract had been terminated. This suit followed.

The Company denies any duty to arbitrate these grievances and seeks dismissal of this action on the grounds that 1) the National Labor Relations Board has exclusive jurisdiction of this matter; 2) the Union, by engaging in a strike which constituted a major breach of the agreement, waived its right to arbitration; and 3) the grievances, in any event, did not comply with the time and specificity requirements of the agreement and are not, therefore, subject to arbitration.

■ It is now authoritatively settled that in suits under Section 301 to compel arbitration the function of the court is narrowly limited to determining "whether the reluctant party did agree to arbitrate the grievance * * *. An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582–583, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960).

■ These parties agreed to arbitrate "all grievances arising" under the agreement "over the interpretation and application of the Agreement" specifically "including discharge and disciplinary action." Surely it cannot be said with "positive assurance" that this clause does not comprehend these discharges. On the contrary, it provides for arbitration of all discharges, not "all discharges except those for engaging in illegal strikes." I find that the dismissals are arbitrable under the agreement, and I do not take the Company to contest seriously the arbitrability of the Paine suspension.

■■ The Company does resist arbitration of the discharges on the ground that the strike constituted an unfair labor practice under Section 8(b) (3) of the National Labor Relations Act, 29 U.S.C. § 158(b) (3),[2] and that the entire matter is, therefore, within the exclusive jurisdiction of the National Labor Relations Board. But that argument is completely refuted by Smith v. Evening News Assn., 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962), which held otherwise. "The authority of the Board to deal with an unfair labor practice which also violates a collective bargaining contract is not displaced by § 301, but it is not exclusive and does not destroy the jurisdiction of the courts in suits under § 301." 371 U.S. at 197, 83 S.Ct. at 269.[3]

■ Trailways argues, furthermore, that the strike allegedly violated the agreement; that, in fact, it constituted a major breach thereof, therefore not only relieving it of the obligation to arbitrate but also entitling it to terminate the agreement. In the light of

2. Section 158(b) (3) provides that it shall be an unfair labor practice for a labor organization or its agents to refuse to bargain collectively with an employer. Under section 158, (d) defines the duty to bargain collectively and adds the proviso that where a contract is in effect the duty to bargain collectively shall also mean that no party to such contract shall terminate or modify such contract, unless the party desiring such termination or modification shall first give a 60-day notice of its intention. During the 60-day period, the party seeking modification shall continue in effect the terms and conditions of the existing contract "without resorting to strike or lockout." Section 158(d) (4). The Union had, in this case, given the 60-day notice about 41 days before the strike.

3. It is, moreover, not at all clear that the strike did constitute an unfair labor practice. See Local Union No. 9735 v. National Labor Relations Board, 258 F. 2d 146 (D.C.D.C.1958).

Drake Bakeries, Inc. v. Local 50, American Bakery & Confectionery Workers, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962); and Local Union 721, United Packinghouse, Food & Allied Workers v. Needham Packing Co., Inc., 376 U.S. 247, 84 S.Ct. 773, 11 L.Ed.2d 680, decided March 9, 1964, I find this argument without merit. See also United Textile Workers v. Newberry Mills, 315 F.2d 217 (4th Cir. 1963); Local 748, Int. U. of E., R. & M. Workers v. Jefferson City Cabinet Co., 314 F.2d 192 (6th Cir. 1963).

The argument that the grievances are not arbitrable as they were not seasonably nor specifically filed is premature. It should be presented to the arbitrator. John Wiley & Sons, Inc. v. David Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898, decided March 30, 1964.

The Union's motion for summary judgment is allowed; Trailways' motion to dismiss is denied. Judgment may be entered accordingly.