**NCR CREDIT CORP., Plaintiff/Counter-Defendant,**

**v.**

**REPTRON ELECTRONICS, INC., Defendant/Counter-Plaintiff.**

**REPTRON ELECTRONICS, INC., Third-Party Plaintiff,**

**v.**

**AT & T GLOBAL INFORMATION SOLUTION COMPANY, f/k/a NCR Corp., Third-Party Defendant.**

No. 94-306-CIV-T-17B.

United States District Court, M.D. Florida, Tampa Division.

Oct. 3, 1994.

Paul Joseph McMahon, Schulte, Blum, McMahon, Joblove & Haft, Miami, FL, for NCR Credit Corp.

Richard Michael Blau, Holland & Knight, Tampa, FL, for Reptron Electronics, Inc.

### ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

KOVACHEVICH, District Judge.

This cause is before the Court on the Third–Party Defendant's, AT & T Global Information Solution Company f/k/a NCR Corp. (AT & T), Motion to Compel Arbitration and to Dismiss Action or Stay Proceedings (Docket No. 30) filed June 20, 1994. Plaintiff, NCR Credit Corp. (NCR), filed a response on July 5, 1994, and Third–Party Plaintiff, Reptron Electronics, Inc. (REPTRON), filed a response on July 12, 1994. Also pending is the Plaintiff/Counter–Defendant, NCR's, Motion to Dismiss the Counterclaim (Docket No. 46).

### FACTS

The following facts are relevant to the resolution of the issues before this Court:

1. NCR is a wholly owned subsidiary of AT & T.

2. In connection with the sale of certain computer equipment to REPTRON, AT & T and REPTRON entered agreements ("the Agreements") on April 12, 1989, and April 12, 1991. REPTRON financed these purchases through NCR with respective lease agreements ("the Leases") on November 16, 1989, and September 10, 1991. NCR, REPTRON and AT & T executed various schedule and purchase order assignment forms to facilitate such financing.

3. The Agreements executed between AT & T and REPTRON had a paragraph that stated as follows:

> Any controversy or claim, including any claim of misrepresentation, arising out of or related to this Agreement and/or any contract hereafter entered into between NCR [AT & T] and Customer, or the breach thereof, or the furnishing of any equipment or service by NCR [AT & T] to Customer, shall be settled by arbitration. The arbitration shall be conducted by a single arbitrator under the then current rules of the American Arbitration Association.

4. The Leases executed between NCR and REPTRON had a paragraph that stated as follows:

> Lessee [REPTRON] agrees not to assert against Lessor [NCR] or assignee any defense, claim or right of set-off which Lessee may have against the vendor [AT & T] of the equipment set forth for any schedule hereunder. Lessee further agrees to assert directly against Vendor any claims it may have arising out of the equipment or its use and agrees to continue payments to Lessor or its assignee under this Agreement even if such claims are pending.

5. NCR filed a claim against REPTRON on February 23, 1994. The Complaint alleges that REPTRON ceased making lease payments in February of 1993 and thus defaulted under the terms of the Leases. NCR demanded damages under breach of contract and a writ of replevin for possession of the computer equipment that was the subject of said Leases.

6. REPTRON filed a Counterclaim against NCR on March 24, 1994.

7. On March 30, 1994, REPTRON filed a Third–Party Complaint against AT & T. The Third–Party Complaint alleges that AT & T failed to refund monies and reclaim the computer equipment as AT & T was obligated to do under express terms of the Agreements when the computer equipment failed to perform as represented by AT & T. REPTRON demands damages under agency/breach of contract, breach of warranty, breach of covenant of good faith and fair dealing, fraud in the inducement, fraud and deceit and negligent misrepresentation, as well as rescission and cancellation of the Agreements.

8. On May 10, 1994, NCR filed a Motion to Dismiss the Counterclaim. The motion was granted on June 10, 1994, with directions for REPTRON to file an amended complaint correcting noted deficiencies 155 F.R.D. 690.

9. On June 20, 1994, AT & T filed a Motion to Compel Arbitration [of REPTRON's claims against AT & T] and to Dismiss Action or Stay Proceedings pending the outcome of arbitration.

10. AT & T amended the above Motion to Compel Arbitration on June 28, 1994, to supplement it with a table of authorities.

11. REPTRON filed its Amended Counterclaim against NCR on June 30, 1994. The Amended Counterclaim alleges that NCR represented itself to be a part of the AT & T business entity and that AT & T employees were representatives of NCR. It further alleges that NCR and AT & T, acting as agent for NCR, made certain promises and representations as to the suitability of the computer equipment for REPTRON's present and future needs, along with express warranties in the Agreements between AT & T and REPTRON, and that said computer equipment failed to perform as warranted. REPTRON demands damages under breach of express warranties of fitness for a particular purpose and fraud in the inducement as well as rescission and cancellation of the Leases.

12. On July 15, 1994 NCR filed a Motion to Dismiss REPTRON's Amended Counterclaim.

13. NCR filed a Response to AT & T's motion to compel arbitration and on July 5, 1994, requesting that the outcome of that motion not affect NCR's claims against REPTRON since NCR was not a signatory to the Agreements.

14. REPTRON's Opposition to AT & T's motion to compel arbitration was filed on July 12, 1994, contending that the agency/instrumentality relationship of AT & T and NCR, together with NCR's subsequent execution and reliance on the Leases to institute it's claims against REPTRON, waived all rights to arbitration contained in the prior Agreements. REPTRON further contended material prejudice and gross inequity if it were forced to pursue claims against AT & T in a separate forum when *all* claims are predicated upon a common nucleus of facts and circumstances. Further, REPTRON claims that such two-track adjudication would defeat the dual goals of convenience and judicial economy embraced by the Federal Arbitration Act.

## ENFORCEABILITY OF ARBITRATION AGREEMENTS

■ An agreement to arbitration of disputes among contracting parties is enforceable in federal court. The Federal Arbitration Act, provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration. 9 U.S.C. § 3 (1994).

■ The Federal Arbitration Act reflects the federal policy favoring the enforcement of arbitration agreements. In *Austin v. A.G.*

*Edwards & Sons, Inc.,* 349 F.Supp. 615 (M.D.Fla.1972), the court expressly found that Title 9 was substantive federal law and as such it preempts conflicting state law. The *Austin* court ruled that a court must stay any action pending arbitration if there is a valid agreement to arbitrate. *Id.* at 616.

Other federal courts have addressed the enforcement of arbitration agreements. In *United States Textile Workers of America v. Newberry Mills, Inc.,* 315 F.2d 217 (4th Cir. 1963), the court held that "[P]arties are bound to arbitrate all matters, not explicitly excluded, that reasonably fit with the language used." *Id.* at 219. The court in *Dickinson v. Heinold Securities, Inc.,* 661 F.2d 638 (7th Cir.1981), quoted from *United States Textile Workers of America v. Newberry Mills, Inc., supra,* and noted the federal policy of construing arbitration agreements to resolve any doubt in favor of arbitration.

The Supreme Court of the United States held that state law claims were arbitrable in *Shearson/American Express Inc. and McNulty v. McMahon et al.,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). The Supreme Court relied on its previous decision in *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). Quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765, 785 (1983), and *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. at 221, 105 S.Ct. at 1242, the *McMahon* court reiterated that the Federal Arbitration Act established a federal policy favoring arbitration.

■ The Agreements executed between AT & T and REPTRON contained an arbitration clause that in significant part agreed to arbitrate "any controversy or claim, including any claim of misrepresentation, arising out of or related to this Agreement...." Such clause contained no exclusions or exceptions to such agreement to arbitrate. Therefore this Court is obliged to enforce such agreement to arbitrate subject to proof of a waiver by AT & T.

## WAIVER OF RIGHT TO ARBITRATION

■ In *Fisher v. A.G. Becker Paribas, Inc.*, 791 F.2d 691, 694 (9th Cir.1986), the court held that a party seeking to prove waiver of a right to arbitration must demonstrate three elements:

1. knowledge of an existing right to compel arbitration;

2. acts inconsistent with that existing right; and

3. prejudice to the party opposing arbitration resulting from such inconsistent acts.

■ Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the issue is the construction of the contract language itself or the allegation of waiver, delay or a like defense to arbitrability. *Moses H. Cone Hospital v. Mercury Construction Corp.*, 460 U.S. at 24–25, 103 S.Ct. at 941–42.

REPTRON alleges that NCR, as agent for AT & T's, waived AT & T's right to arbitration under the Agreements by execution of the Leases and by instituting claims against REPTRON based on those Leases in a judicial forum. Thus before the issue of waiver can be resolved, the court must address the issue of the alleged agency relationship between AT & T and NCR.

## APPARENT AGENCY RELATIONSHIP

■ REPTRON alleges that AT & T and NCR functioned as a single entity for purposes of marketing the computer equipment and are therefore liable, not only for their own actions but those of their agent/instrument. Finding of an apparent agency relationship to support REPTRON contention would necessitate piercing the corporate veils of AT & T and NCR. It is long established under Florida law that a corporation has every right to rely on the laws that protect it as a separate entity absent the showing of improper conduct. *Dania Jai–Alai Palace, Inc. v. Sykes*, 450 So.2d 1114, 1120 (Fla.1984). To ask the Court to find that such an agency relationship exist between NCR and AT & T is asking the Court to rule on a factual issue. In *Sykes*, the Florida Supreme Court stated that:

It does not lie within the province of the Court to weigh evidence or determine questions of credibility and, where there is the possibility of different conclusions or inferences from the evidence the Court should submit the issue to the jury.

*Dania Jai–Alai Palace, Inc. v. Sykes*, 450 So.2d at 1121, *citing Bruce Construction Corp. v. The State Exchange Bank*, 102 So.2d 288 (Fla.1958).

■ There is alleged evidence contrary to REPTRON's allegations which, if accepted by the trier of fact, tends to show that AT & T and NCR operated independently of each other. Each party, NCR and AT & T, executed separate contracts with REPTRON. The Leases, and accompanying schedules and assignments, executed with NCR, were executed on different dates than the Agreements executed with AT & T. The Leases contain a paragraph that specifically addresses the separate liability of NCR and AT & T. On the other hand, there is also alleged evidence tending to support the contentions of REPTRON that NCR and AT & T functioned as a single entity to effect the subject transactions. NCR is a wholly owned subsidiary of AT & T and alleged written and oral representations were made to REPTRON in marketing material regarding the advantages of AT & T and NCR working together to facilitate the transaction.

The Court finds that disputed evidentiary facts have been presented in the pleadings and that such issues are reserved for the trier of fact.

## STAYING THE PROCEEDING AS TO ALL CLAIMS

It has been alleged by NCR that any arbitration of the claims between AT & T and REPTRON should not be permitted to forestall the proceedings between NCR and REPTRON because NCR is not a signatory to the Agreement on which AT & T bases its right to compel arbitration. NCR relies on the authority of *In the Matter of Talbott Big Foot, Inc.*, 887 F.2d 611 (5th Cir.1989) which held that the stay provision of the Federal Arbitration Act did not apply to parties who were not contractually bound by the arbitra-

tion agreement. But further examination of that holding reveals that the Fifth District Court recognized that privity between two parties, so that an arbitrator's award would have preclusive effect against the non-contracting party, would open the issue for further examination. Citing *Moses H. Cone Hospital v. Mercury Construction,* 460 U.S. at 20, 103 S.Ct. at 939, the court went further and said that although a party may not be entitled to a stay as a matter of law, the court may grant a discretionary stay of reasonable duration if appropriate. That same court held that the comparable Florida statute, Fla.Stat. § 682.03(3), requiring courts to stay a lawsuit that involves same issue as one sought to be arbitrated, does not require parties to be identical in both proceedings so long as the same issue is determinable. *425 Florida, Inc. v. George V. Behan Construction, Inc.,* 497 So.2d 1340, 1341 (5th Cir. 1986). In *425 Florida, Inc.,* the court found that an owner was entitled to a stay of his counterclaim against a general contractor alleging fraud in construction of a condominium project, pending resolution by an arbitrator of a fraud issue in the owner's third-party action against architect. In both claims the fraud issues involved alleged collusion between the architect and the general contractor. Although NCR is not a signatory to the Agreements on which AT & T basis its right to compel arbitration, REPTRON's claims against NCR *and* AT & T involve disputed factual issues as to the legal relationship between NCR and AT & T, *as well as* allegations of fraudulent inducement of REPTRON. Central to any arbitration between REPTRON and AT & T is an issue which is not severable from the issue in the litigation between REPTRON and NCR until resolution of the factual issue of the relationship between AT & T and NCR is reached.

### CONCLUSION

In examining AT & T's right to compel arbitration in light of the strong federal policy favoring enforcement of arbitration agreements, the Court finds that REPTRON's arguments opposing the Motion to Compel Arbitration are unpersuasive. On the other hand, such arguments are contingent on the alleged agency relationship be-

tween AT & T and NCR and disputed evidentiary facts which have been presented in the pleadings. Should such factual issues be resolved in favor of REPTRON, such arguments may warrant re-examination by this Court. The disputed evidentiary facts regarding the legal relationship between AT & T and NCR must be submitted to an arbitrator, the trier of fact under an enforceable arbitration agreement. The alleged fraud in REPTRON's Counterclaim against NCR *and* REPTRON's Third–Party Claim against AT & T, mandates a stay of all claims between REPTRON, AT & T and NCR pending resolution of the disputed factual issues regarding the legal relationship between AT & T and NCR.

Accordingly, it is

**ORDERED** that the Motion to Compel Arbitration (Docket No. 30) be **GRANTED** as to the disputed factual issues regarding the relationship between AT & T and NCR; the court reserves ruling on the issues of law in said motion pending resolution of such factual issues; the Motion to Stay Action or Stay Proceedings (Docket No. 30) be **GRANTED** as to the stay of all claims between all parties to this action pending resolution of this court as to the arbitrability of REPTRON's Third–Party claim against AT & T; the Motion to Dismiss Counterclaim (Docket No. 46) be DEFERRED; and this cause of action be **ADMINISTRATIVELY CLOSED** pending resolution of the arbitration proceeding.

**DONE and ORDERED.**