SNELLING AND SNELLING, INC., a Pennsylvania Corporation, and Advance Processing Systems, Inc., a Delaware Corporation, Plaintiffs,

v.

Joseph J. REYNOLDS, MTX of Southwest Florida, Inc., and Pan World Resources Corporation, Defendants.

No. 8:99CV2103T17EAJ.

United States District Court,
M.D. Florida,
Tampa Division.

April 24, 2001.

Ronald Sturgis Holliday, Piper Marbury
Rudnick & Wolfe, Tampa, FL, for Snelling
and Snelling, Inc., a Pennsylvania corpora-
tion, Advance Processing Systems, Inc., a
Delaware corporation, plaintiffs.

Robert Zarco, Robert M. Einhorn, Zarco
& Pardo, P.A., Miami, FL, for Joseph J.

Reynolds, a resident of Florida, MTX of Southwest Florida, Inc., Pan World Resources Corp., defendants.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT, TO COMPEL ARBITRATION, AND PARTIAL SUMMARY JUDGMENT

KOVACHEVICH, District Judge.

This cause is before the Court on the following motions and responses:

| | |
|---|---|
| Dkt. 36 | Motion for Summary Judgment (Defendants) |
| Dkt. 37 | Motion to Compel Arbitration (Defendants) |
| Dkt. 39 | Motion for Partial Summary Judgment (Plaintiffs) |
| Dkt. 45 | Response to Summary Judgment Motion (Plaintiffs) |
| Dkt. 48 | Response to Compel Arbitration Motion (Plaintiffs) |
| Dkt. 52 | Response to Partial Summary Judgment (Defendants) |

## STANDARD FOR SUMMARY JUDGMENT

This Circuit has long held that summary judgment is appropriate only when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the non-moving party. *See Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983). The moving party bears the initial burden of demonstrating for the court the basis for its motion for summary judgment by identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions which that party believes show an absence of any genuine issue of material fact. *See Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 918 (11th Cir.1993). Factual disputes preclude summary judgment.

In *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the United States Supreme Court held:

In our view, the plain language of [Fed. R.Civ.P.] 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear burden of proof at trial.

A dispute is genuine, and summary judgment is inappropriate, if a reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the moving party has satisfied its burden, the non-moving party must:

...go beyond the pleadings and by his or her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'

*See Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff, Snelling and Snelling, Inc., ("Snelling"), is a franchisor of personnel and temporary service businesses. (Dkt.40). Plaintiff, Advance Processing Systems, Inc., ("Advance"), is an affiliate of Snelling, that provides payroll funding and processing services to Snelling's franchisees. (Dkt.40). On February 7, 1992, Snelling entered into a franchise agreement with the Defendants, Pan World Resources Corporation, ("Pan World"), Joseph J. Reynolds, ("Reynolds"), principal or controlling owner of Pan World. (Dkt.36). Under this agreement, ("the Philippines Agreement"), Snelling granted Pan World the license rights to operate a personnel services business by using Snelling franchise system in Manila, Philippines. (Dkt.36).

On April 21, 1995, Snelling entered into another franchise agreement with Pan

World and Reynolds, ("the Pan World Agreement"). (Dkt.36). Pursuant to the Pan World Agreement, Snelling granted Pan World the license rights to operate a personnel services business by using Snelling franchise system. In December, 1997, Pan World changed the approved location to 5714 Clark Road, Sarasota, Florida 34328. (Dkt.36). Additionally, within the Pan World Agreement is the agreement between Advance and Pan World, ("the Payroll Agreement"). (Dkt.36). The Payroll Agreement is an unconditional written guaranty of the obligations of Pan World to Advance. (Dkt.40).

On March 16, 1998, Snelling and Advance entered into another franchise and payroll agreement with Pan World and Reynolds, ("the Resources Agreement"). (Dkt.36). Thereafter, Pan World's interest in the Resources Agreement was transferred to Sarasota Resources Corporation, ("SRC"); Reynolds was the principal or controlling owner of SRC. (Dkt.36). Pursuant to the Resources Agreement, Snelling granted SRC the license rights to operate a personnel services business by using Snelling franchise system at 5712 Clark Road, Sarasota, Florida 34238. (Dkt.36). Additionally, within the Resources Agreement, Reynolds entered into an unconditional written guaranty of the obligations of SRC to Snelling and Advance. (Dkt.36).

On August 12, 1999, Snelling terminated the Pan World Agreement. Snelling alleges that Pan World breached provisions of the contract. (Dkts.36, 40). In addition, all of the franchise agreements between Snelling, Pan World, and Reynolds, have "cross-defaults." (Dkt.36). Since Snelling terminated the Pan World Agreement, Snelling also terminated the Philippines Agreement pursuant to subsection 13(d), and the Resources Agreement pursuant to subsection 10(i). (Dkt.36).

In addition, Reynolds and Pan World agreed not to compete with Snelling, upon termination of the franchise agreements. (Dkt.22). In each agreement between the parties, there was a non-compete covenant for a certain limited time and within a certain geographic location. (Dkt.22). The relevant provisions that deal with the scope of the non-compete covenants are subsection 12(b) of the Pan World Agreement, subsection 14(c)(4) of the Resources Agreement, and subsection 11(b) of the Philippines Agreement. (Dkt.22). Pursuant to the non-compete covenants, all the parties agreed not to compete with Snelling during the two-year period after termination of any of the agreements. (Dkt.22).

However, if Pan World and Reynolds decided to compete with Snelling within that period, the parties were required to comply with certain conditions. (Dkt.22). These conditions are set out in the agreements, subsection 11(d) of the "Pan World Agreement Post–Termination Obligations," subsection 13(e) of the "Resources Agreement Post–Termination Obligations," and subsection 10(e) of the "Philippines Agreement Post–Termination Obligations." (Dkt.22). The Post–Termination Agreements list the conditions with which Defendants were required to comply in order to compete with Snelling. (Dkt.22).

In February, 2000, Plaintiffs filed the Verified Second Amended Complaint, alleging that Defendants breached the conditions set forth in the Post–Termination Obligations of the agreements. (Dkt.22). Plaintiffs allege that Defendants are competing against Snelling, in violation of the agreements. (Dkt.22). Accordingly, Snelling is seeking preliminary and permanent injunctive relief against Reynolds for failure to comply with the Pan World Agreement, and damages for breach of the Resources Agreement, and breach of the Philippines Agreement. (Dkt.22). In ad-

dition, Snelling seeks preliminary and injunctive relief against MTX of Southwest Florida, Inc., ("MTX"). (Dkt.22). Reynolds is the principal or controlling owner of MTX, to which Snelling alleges Reynolds has assigned Pan World's and Resource's business interest, or MTX is providing services to clients or former clients of Snelling. (Dkt.22). Furthermore, Snelling is seeking preliminary and permanent injunctive relief against Pan World for failure to comply with the Pan World Agreement, and breach of the Philippines Agreement. (Dkt.22). In addition, Snelling and Advance seek action on the written guaranties against Reynolds with the Pan World Agreement, the Resources Agreement, and the Payroll Agreement. (Dkt.22).

On February 7, 2000, the Court denied Snelling's Motion for Preliminary Injunction against MTX and Reynolds without prejudice.

## DISCUSSION

### Failure to Comply and Breach of Agreements

■ Plaintiffs argue that Reynolds and Pan World failed to comply with the Pan World Agreement, and breached the Resources Agreement and the Philippines Agreement. Plaintiffs' argument arises from the alleged violations of the non-compete covenants in each of the three agreements; however, the non-compete covenants are based on Pennsylvania law. In determining whether the parties breached these agreements, the Court first must determine which law governs this action. *See Punzi v. Shaker Advertising Agency, Inc.*, 601 So.2d 599 (Fla. 2d DCA 1992). Snelling contends that Pennsylvania law is applicable in deciding the reasonableness of the non-compete covenants. Since Snelling has indicated its intention for the governing law, Pennsylvania law will govern the dispute between the parties, as long as that law is not against the public policy of the forum state. *See De-partment of Motor Vehicles v. Mercedes-Benz of North America, Inc.*, 408 So.2d 627 (Fla. 2d DCA 1981).

### Choice of Law

First, the Court must determine whether Pennsylvania law governing non-compete covenants is contrary to Florida's public policy. *See Punzi*, 601 So.2d at 600. The fact that Pennsylvania law is different then Florida law does not necessarily mean that it is against the public policy of Florida. *See id.* According to the Section 542.33, *Florida Statutes*, two parties may lawfully enter into a non-compete covenant as long as it is within a reasonable time and area. In addition, the statute states that the court has discretion in enforcing the agreements by injunction. *Fla. Stat.* 542.33(1)(b) (2000). Furthermore, in a franchise agreement, a court shall presume a non-compete covenant is reasonable when the time restraint duration is one year or less, and unreasonable when the time restraint duration is more than three years. *Fla. Stat.* 542.335(1)(d)(2) (2000). Snelling's non-compete covenant duration of two years falls between those two presumptions.

The geographical limitation on the restraint not to compete within a ten-mile radius is reasonable. *See Jewett Orthopaedic Clinic, P.A. v. White*, 629 So.2d 922 (Fla. 5th DCA 1993) (the geographic scope of the State of Florida is reasonable to conclude the enforcement of a non-compete covenant). Moreover, the non-compete covenant is not contrary to public health, safety, or welfare. *Fla. Stat.* 542.33(2)(a) (2000). The Court concludes that the non-compete covenants governed by Pennsylvania law are not contrary to Florida's public policy. Therefore, Pennsylvania law will apply in this case.

### Enforceability of Non–Compete Covenants

■ In considering whether Defendants have violated the non-compete covenant, the Court must determine whether the covenants are enforceable under Pennsylvania law. *See Rita's Water Ice Franchise Corp. v. DBI Investment Corp.*, 1996 WL 165518, 1996 U.S. Dist. LEXIS 4551 (E.D.Pa.1996). According to Pennsylvania law, an enforceable restrictive covenant in "the franchise context must satisfy three requirements:

1) the covenant must relate to either a contract for sale of goodwill or other subject of property;

2) the covenant must be supported by adequate consideration; and

3) the covenant must be reasonably limited in both time and territory."

*See id.* 1996 WL 165518, at *3, 1996 U.S. Dist. LEXIS 4551, at *8. In this case, the first requirement relates to a proprietary business interest. Pennsylvania courts determine a protectible interest in the context of franchises by considering: the expenditures made by franchisor for market developing and training, the exclusive grant of sales or services area, and the permission to use the franchisor's name. *See id.* 1996 WL 165518, at *3, 1996 U.S. Dist. LEXIS 4551, at *8. A franchisor's interest in the exclusivity of rights, in advertising assistance, training, logo, and name are factors that indicate the protection of non-compete covenants. *See Sparks Tune–Up, Inc. v. White*, 1989 WL 41321, 1989 U.S. Dist. LEXIS 4216 (E.D.Pa.1989). Snelling has created a confidential system of operations and only authorized licensees are allowed to use that system. In addition, Snelling has established extensive use of advertisement of its trade name, trademark, and service marks. Therefore, Snelling demonstrates that its non-compete covenants are necessary to protect a proprietary interest.

■ The second requirement is whether there was adequate consideration for the restrictive covenants in the agreements. *See Rita's Water*, 1996 WL 165518, at *3, 1996 U.S. Dist. LEXIS at *9. Adequate consideration may be found by determining that a restrictive covenant is a condition to an original grant of the franchise agreement. *See id.* In addition, consideration is supported when the defendant receives the benefits of the franchise agreement. *See id.* In this matter, the non-compete covenants were a condition to the original grant of the franchise agreements, and Reynolds and Pan World received benefits from the franchise agreements. Therefore, Snelling's non-compete covenants are supported by adequate consideration.

The final requirement is whether the covenants are reasonably limited in time and territory. *See id.* In this case, the non-compete agreements have a two-year term and ten-mile radius restrictions not to compete. The Pennsylvania Supreme Court has held that a two-year limitation on non-compete covenants is reasonable. *See Boldt Machinery & Tools, Inc. v. Wallace*, 469 Pa. 504, 366 A.2d 902, 908 (1976). In addition, a Pennsylvania Supreme Court case held that a thirty-mile radius was reasonable to protect a franchisor's interest. *See Piercing Pagoda, Inc. v. Hoffner*, 465 Pa. 500, 351 A.2d 207, 212 (1976). Therefore, the covenant restrictions are reasonably limited in time and territory. The Court concludes that Snelling's non-compete covenants are enforceable under Pennsylvania law.

### Violations of Non–Compete Covenants

■ Plaintiffs contend that Reynolds and Pan World have violated the non-compete agreements. On February 7, 2000, the Court denied the Motion for Preliminary Injunction against Reynolds and MTX without prejudice. The Court de-

nied the Motion based upon the contested facts of this matter. (Dkt.25). However, Defendants argue that there is no dispute of material fact.

Defendants contend that there is no violation of the Post–Termination Obligation Agreements in each of the three franchise agreements. Defendants base that decision upon this Court's determination of Snelling's. Preliminary Injunction Motion and on Reynolds's Declaration. Reynolds does admit in his declaration that Pan World continued business with one client, but only after he referred that client back to Snelling upon termination. (Declaration of Joseph J. Reynolds, Dkt. 36, pg. 5–6). Further, Defendants contend that the violation of the non-compete covenants is based upon rumors which are not supported by evidence. (Deposition of Joseph Ronald DeMarco, Dkt. 36, pg. 67–89; Deposition of John Russell Crews, Dkt. 36, pg. 76–77).

Nevertheless, Snelling asserts that Pan World and Reynolds are continuing business with the same clients after termination of the agreements. On February 29, 2000, Snelling had taken Reynolds's deposition, which discussed the schedule of Pan World's account receivable that has been filed with its bankruptcy petition. (Deposition of Joseph J. Reynolds, Dkt. 43, pg. 173). Accordingly, Snelling states that the schedule reflected the same clients that Pan World used to service before the termination of the franchise agreements. The schedule listed: "Baptist Home Health, Memphis City School, School Board Manatee, and United States Coast Guard." (Dkt.43, pg.174–75).

In addition, Pan World's monthly financial report to the Bankruptcy Court on December 20, 1999, listed the clients that it had provided service of temporary employees. Snelling asserts, through Reynolds' deposition, that those clients are the same clients Pan World had serviced prior to termination. The list includes: "Baptist Home Health, Manatee County School Board, Memphis City Schools, Sarasota County School Board, and United States Coast Guard." (Dkt.43, pg.176). Moreover, in his deposition, Reynolds admits that Pan World had serviced business with the above-mentioned clients after the termination date of the agreements. (Deposition of Joseph J. Reynolds, Dkt. 43, pg. 177–78).

The Court considers everything in the record in the determination of whether Defendants violated the non-compete covenants. Plaintiff Snelling has offered evidence contrary to Defendants' belief that there has been no violation of the non-compete covenants. This Circuit has held that an affidavit can be disregarded or found to have discrepancies when it contradicts other evidence, which creates a material issue of fact. *See Tippens v. Celotex Corp.*, 805 F.2d 949, 954 (11th Cir. 1986). The declaration and deposition of Reynolds contain discrepancies as to whether Defendants are continuing business with pre-termination clients, and whether that business is regarded as competition toward Snelling. When considering all the evidence in the record in the light most favorable to the nonmoving party, sufficient evidence exists to raise a genuine issue of material fact. Accordingly, the Court denies the Motion for Summary Judgment of Reynolds, MTX, and Pan World on Counts I, II, III, IV, VII, and VIII.

### Breach of Guaranties

■ Pursuant to Counts V and VI, Plaintiffs are seeking to recover money damages from Reynolds' breach on the written guaranties. Defendants base the Motion to Compel Arbitration on these counts. However, Plaintiffs contend that Reynolds has waived his right to arbitration, and move for partial summary judg-

ment on Counts V and VI. First, the Court must determine whether a right to arbitration exists, and whether Reynolds has waived that right. *See Wilson v. Par Builders II, Inc.,* 879 F.Supp. 1187 (M.D.Fla.1995).

**Enforceability of Arbitration Agreements**

The Supreme Court has held that arbitration is a contract between parties to resolve disputes only as to those disputes that the parties have agreed to submit to arbitration. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). The franchise agreements between the parties contain arbitration clauses. In particular, Defendants note the Pan World Agreement, Section 13(c); the Resources Agreement, Section 15(c); and the Payroll Agreement, Section 7(c), when referring to the arbitration clauses. Pursuant to the Pan World Agreement and the Resources Agreement, the arbitration clauses stated:

> "Provided in this Agreement, Snelling and Franchisee agree that any claim, controversy or dispute arising out of or relating to the franchise, Franchisee's operation of the PS under this Agreement including, but not limited to, any claim by Franchisee, or any of the owners, or persons claiming on behalf of Franchisee or the owners, concerning the entry into, the performance under or the termination of the Agreement, or any other Agreement between Snelling, or its subsidiaries or affiliates, and Franchisee, any claim against a past or present officer, ·director, employee or agent of Snelling, including those occurring subsequent to the termination or expiration of this Agreement, that cannot be amicably settled among the parties or through mediation shall, ... be referred to arbitration."

In addition, pursuant to the Payroll Agreement the arbitration clause stated:

> "...If the parties are unable to resolve the dispute within ninety (90) days subsequent to the appointment of a mediator, then the dispute shall be referred to mandatory arbitration. The arbitration shall be conducted through the American Arbitration Association ("AAA") in accordance with the normal ruled of the AAA. Notwithstanding the foregoing, Advance may bring an action (1) for monies owed, and (2) for injunctive or other extraordinary relief, without submitting such action to mediation."

█ Furthermore, an agreement to arbitrate among contracting parties is enforceable under the Federal Arbitration Act. *See NCR Credit Corp. v. Reptron Electronics, Inc.,* 863 F.Supp. 1561, 1564 (M.D.Fla.1994). The parties agreed and contracted to resolve disputes through arbitration pursuant to the Federal Arbitration Act (9 U.S.C. § 1 *et. seq.* 2001), and Plaintiffs do not dispute that fact. Therefore, the Court is required to enforce the arbitration agreement pursuant to the Federal Arbitration Act.

**Waiver of Right to Arbitration**

Plaintiffs do not dispute that the Federal Arbitration Act is applicable, and that it governs enforcement of the arbitration clauses. However, Plaintiffs argue that Reynolds has waived his right to arbitrate. Plaintiffs assert that Reynolds has waived this right because he waited for over one year to move to compel arbitration, and participated in discovery and court-ordered mediation.

█ A party seeking to prove a waiver of a right to arbitration must demonstrate: "1) knowledge of an existing right to compel arbitration; 2) acts inconsistent with that existing right; and 3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *See NCR Credit Corp.,* 863 F.Supp. at

1565. If the party demonstrates the three elements, then the party seeking to compel arbitration has waived its rights. *See Morewitz v. The West of England Ship Owners Mutual Protection and Indemnity Association,* 62 F.3d 1356, 1365 (11th Cir. 1995). However, in considering the issue of waiver to arbitration, this Court must keep in mind the federal policy favoring the enforcement of arbitration agreements. *See id.* at 1366. Furthermore, if there are doubts that concern the arbitration, it must be resolved in favor of arbitration, including a waiver defense. *See Wilson,* 879 F.Supp. at 1189. Nonetheless, this Circuit has held that despite the federal policy favoring the enforcement of arbitration agreements, a party may waive its rights through its conduct. *See S & H Contractors, Inc., v. A.J. Taft Coal Company, Inc.,* 906 F.2d 1507, 1514 (11th Cir. 1990).

█ The first prerequisite to prove waiver is that Reynolds must have had knowledge of an existing right to compel arbitration. *See NCR Credit Corp.,* 863 F.Supp. at 1565. A party who signs a contract is presumed to know and understand the contents of the terms and conditions of the contract. *See Sabin v. Lowe's of Florida, Inc.,* 404 So.2d 772, 773 (Fla. 5th DCA 1981). In addition, the facts of this case demonstrate that the parties agreed to resolve disputes through arbitration. Therefore, Reynolds is charged with knowledge of the right to compel arbitration.

The second element is whether Reynolds engaged in acts inconsistent with the existing right to arbitrate. *See NCR Credit Corp.,* 863 F.Supp. at 1565. In *Eagle Traffic Control Inc., v. James Julian, Inc.,* the court reasoned failure to demand arbitration during pre-trial proceedings, and thus engaging in pretrial activity, is inconsistent with the intent to arbitrate. 945 F.Supp. 834 (E.D.Pa.1996). In *Eagle*

*Traffic,* the court found that the defendant's participation in pre-trial proceedings, the filing of a motion to dismiss; and the taking of depositions were all signs of acts inconsistent with the intent to arbitrate. *See id.* at 836. Similarly, Reynolds has substantially participated in litigation to a point that is inconsistent with the intent to arbitrate. Reynolds moved to compel arbitration after fourteenth months from service of the original Complaint in September of 1999. The Complaint has been amended twice; however, these amendments did not alter Snelling's relief requested against Reynolds in Counts V and VI. In addition, Reynolds has answered Plaintiffs' Complaint, participated in the Case Management Conference and the Court–Ordered Mediation, without seeking to compel arbitration.

Furthermore, Reynolds moved to compel arbitration after the close of discovery. Reynolds engaged in taking depositions, requested document production, served written discovery, and responded to Plaintiffs' written discovery, again without seeking to compel arbitration during any of these proceedings. Therefore, Reynolds has demonstrated through his conduct acts inconsistent with the intent to arbitrate.

The final prerequisite is whether Plaintiffs have been prejudiced by Reynolds' engagement in acts inconsistent with the intent to arbitrate. *See NCR Credit Corp.,* 863 F.Supp. at 1565. This Circuit has held that to determine whether the other party has been prejudiced, the court may consider the length of delay in demanding arbitration and the expense incurred by the opposing party. *See S & H Contractors,* 906 F.2d at 1514. Reynolds waited over fourteen months before filing a motion to compel arbitration. During this time, Plaintiffs have incurred the expense of responding to Defendants' discovery requests. In addition, Plaintiffs have in-

curred expense in litigating the summary judgment motion on Counts V and VI.

A substantial invocation of the litigation process that is combined with forcing the opposing party to litigate issues in the case, which could have been alleviated through arbitration, is a sufficient finding of prejudice to constitute a waiver. *See Eagle Traffic*, 945 F.Supp. at 836. Defendants have invoked the litigation process by moving for a summary judgment on other counts of the complaint. Moreover, Plaintiffs would not have undertaken the task to move for summary judgment on the written guaranties, if Defendants had not delayed in moving to compel arbitration. The Court finds that Reynolds' delay in moving to compel arbitration was prejudicial to Plaintiffs. Therefore, Plaintiff Snelling has demonstrated through Reynolds' conduct the three elements required for the Court to find waiver of right to arbitrate, and Defendants' Motion to Compel Arbitration is denied.

## Summary Judgment on Guaranties

Finally, the Court can determine the merits of Plaintiffs' Motion for Partial Summary Judgment. Plaintiffs contend that Reynolds breached his guaranties and owes Plaintiffs money damages. However, Plaintiffs have not asserted a damage claim against Pan World because it is currently in a Chapter 11 reorganization proceedings. Pursuant to Count V, Snelling asserts that Reynolds breached his guaranties with respect to the Pan World and Resources Agreement, and that he owes Snelling $49,040.62 in principal, $6,150.00 in prejudgment interest through November 29, 2000, and additional prejudgment interest at the rate of $12.95 per day. (Dkt.39). Pursuant to Count VI, Advance asserts that Reynolds breached his guaranties with respect to the Payroll Agreement, and that he owes Advance $79,807.95 in principal, $15,830.07 in prejudgment in-

terest through November 29, 2000, and additional prejudgment interest at a rate of $25.23 per day. (Dkt.39). However, Defendants dispute the accuracy of the amount in money damages and assert that Plaintiffs owe them a substantial amount in credit.

The facts of this case show no dispute as to whether Reynolds entered into written guaranty agreements with Snelling and Advance. Accordingly, the written guaranty agreements arose out of the Pan World Agreement, the Resources Agreement, and the Payroll Agreement. (Dkt.22). Pursuant to subsection 13(k) of the Pan World Agreement, "Reynolds guaranteed to Snelling, that all of Pan World's obligations under the agreement would be punctually paid and performed." (Dkt.22). In addition, the agreement stated "upon default by Pan World or upon notice by Snelling, Reynolds agreed to make each payment and perform each obligation required of Pan World under the Pan World Agreement." (Dkt.22). Furthermore, subsection 11(f) of the Pan World Agreement stated that if this agreement was to be terminated, Pan World was still not released from its obligations, money due or owed to Snelling. (Dkt.22). In addition, the Resources Agreement and the Payroll Agreement held similar subsections to Reynolds obligating himself to Snelling and Advance.

Plaintiffs assert that Reynolds has breached his guaranty agreements. Upon termination of the agreements, Reynolds was obligated to reimburse Plaintiffs for payroll, costs or expenses advanced to Defendants, and for royalties and overrides in compliance with the terms of the agreement. Therefore, Reynolds is obligated to the enforcement of these agreements, as to which both parties agree that Pennsylvania law is applicable. *See Paul Revere Protective Insurance Company v. Weis*,

535 F.Supp. 379 (E.D.Pa.1981) (reasoning that a contractual right to payment is enforceable to claim damages that are ascertainable by computation).

Nonetheless, Defendants argue that neither, Pan World, SRC, or Reynolds owes Snelling and Advance the amounts that they are seeking. (Dkt.52). Defendants assert that Plaintiffs did not calculate in the money damages the credits that are owed to Defendants. Accordingly, to Reynolds declaration, he asserts the following lists for credit owed to the Defendants:

| | | |
|---|---|---|
| 1) | Advertising Fund Reimbursement | $ 54,519.32 |
| 2) | 401(k) Administration Fee Credit | $ 26,113.50 |
| 3) | In-house Tax Filing Reimbursement | $ 12,500.00 |
| 4) | Override Fee Reimbursement | $141,342.20 |

(Declaration of Joseph J. Reynolds, Dkt. 52, pg.1–3).

Defendants argue that these various credits were owed to Pan World through the terms of the franchise agreements. Specifically, Pan World is owed an advertising fund reimbursement because it had to fund its own advertising. Defendants assert that the Philippines Agreement did not contain a clause for an advertising fund contribution. Therefore, the Pan World Agreement should have been entitled to a similar advertising fund credit. Defendants also contend that the 401(k) administration fee credit is owed to Pan World because Snelling did not make this plan available to Pan World. Therefore, it had to allocate its own resources to the plan. In addition, Defendants argue that the in-house tax filing credit is owed to Pan World because it was required to fill that position, when the Snelling employees who use to performed that task left. The final credit that Defendants claim that is owed to Pan World is the reimbursements of override payments. Pan World asserts that it had presented to Snelling's attention the inaccuracies of computing the override payments, and that Snelling failed to correct the problem. Furthermore,

Reynolds declared that the amount of the money should be reduced for the following reasons:

| | | |
|---|---|---|
| 1) | SRC Receivables held by Snelling | $ 10,507.98 |
| 2) | SRC after termination business taken by Snelling | $ 14,072.82 |
| 3) | SAMCS cost of franchise | $451,100.00 |
| 4) | Cost of Manila Franchise | $225,972.32 |
| 5) | SRC Investment | $ 50,000.00 |
| 6) | Medical Insurance Administration | $ 23,000.00 |
| 7) | Unreimbursed cost of travel due from Snelling | $ 1,500.00 |
| 8) | Unreimbursed award for Manila Franchise form 1999 Snelling Convention | $ 2,000.00 |
| 9) | Worker's Compensation | $ 23,000.00 |
| 10) | Professional and General Liability Insurance | $ 12,000.00 |
| | TOTAL | $813,153.12 |

(Declaration of Joseph J. Reynolds, Dkt. 52, pg. 3–4).

Accordingly, Reynolds has offered through his declaration, "specific facts" that raise genuine issues of material facts in the calculation of the damages. *See Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. Defendants dispute the facts pertaining to the calculations for damages, and this will require a resolution to calculate what is owed to the Plaintiffs. *See Prime Building Corp. v. Itron, Inc.*, 22 F.Supp.2d 440, 446–447 (E.D.Pa.1998). Therefore, the Court denies the Motion for Partial Summary Judgment of Snelling and Advance on Counts V and VI. Accordingly, it is

**ORDERED** that Defendants' Motion for Summary Judgment (Dkt.36) is **denied;** Defendants' Motion to Compel Arbitration (Dkt.37) is **denied**, and Plaintiffs' Motion for Partial Summary Judgment (Dkt.39) is denied.